RECEIVED
AUG 2 8 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOSHUA BONADONA | DOCKET NO.: 1:18-cv-00224 |
| VERSUS | |
| LOUISIANA COLLEGE AND RICK BREWER | JUDGE DEE D. DRELL<br>MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is a motion for summary judgment (Doc. 37) filed by defendants, Louisiana College ("LC") and its President, Rick Brewer ("Brewer"), in which they seek dismissal of all claims against them in the above captioned matter. For the reasons expressed below, the court finds the defendants' motion should be **GRANTED in part and DENIED in part**.

## Facts

Joshua Bonadona ("Bonadona") was born to a Catholic father and Jewish mother. He was raised both culturally and religiously as a member of the Jewish community. His mother is both racially and religiously Jewish.

Bonadona graduated high school in 2008. Thereafter, he attended a state university for a year and then transferred to LC where he earned a position on the football team as a kicker on the punt block team. It was during his tenure as an LC student that Bonadona converted to Christianity.

Upon his graduation from LC in 2013, LC hired Bonadona as an assistant football coach. In June 2015, he resigned his position to pursue a graduate degree and football coaching position at Southeast Missouri State University.

In 2017, LC hired Justin Charles ("Charles") as its new head coach of the football team. Charles reached out to Bonadona about returning to LC as its defensive backs coach. Bonadona submitted an application wherein he identified himself as a Baptist, described his salvation experience, and acknowledged he understood and supported LC's mission statement.

Bonadona interviewed with Charles who advised that the coaching position was his, subject to approval by Brewer. Accordingly, Bonadona interviewed with Brewer. During the interview, Brewer asked Bonadona about his parents' religious affiliations. Bonadona affirmed his father was Catholic and his mother was Jewish but expressed he was a practicing member of the Christian faith and attended a Baptist church in Missouri.

Based on representations made by Charles, Bonadona returned to Missouri and submitted his resignation. According to Bonadona, Charles contacted him a week later to advise that LC decided not to hire him because of his Jewish heritage.

Plaintiff filed a charge of racial discrimination with the EEOC and after exhausting his administrative remedies filed the instant lawsuit alleging racial discrimination by LC and Brewer in violation of Title VII and 42 U.S.C. §1981.

## Applicable Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-

fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

When considering a motion for summary judgment we view the evidence in the light most favorable to the plaintiff, taking the record evidence and all reasonable inferences therefrom in his favor. Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir.2000). We assume the truth of the statements in the record; we do not make credibility determinations or weigh the evidenc. Id.

## Law and Analysis

Defendants contend Bonadona's claim for racial discrimination claims under Title VII and Section 1981 should be dismissed because: (1) Bonadona cannot establish a *prima facie* case of racial discrimination; (2) the record is devoid of any competent evidence establishing intentional

discrimination; and (3) the claims violate the "Free Exercise" and "Establishment" clauses of the First Amendment.

Racial Discrimination Under Title VII

Employers are prohibited under Title VII from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Bonadona asserts a claim under Title VII for racial discrimination arguing that Jews are a protected racial class. Bonadona acknowledges that race is not defined in Title VII but says we can look to civil rights statutes 42 U.S.C. §§1981 and 1982 which define race to include Jews. In support, he cites Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987) (protection as a race under §1981), Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987) (protection as a race under §1982), and T.E. v. Pine Bush Central School District, 58 F.Supp.3d 332 (S.D. New York 2014) (protection under Title VI).

"When conducting statutory interpretation, the Court 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" Gross v. FBL Fin.Servs., Inc., 577 U.S. 167, 175 (2009) (quoting Federal Express Corp. v. Holowecki, 522 U.S. 389, 393 (2008). Though §1981, §1982, and Title VII, are all civil rights statutes, their aims are not the same and the rights given under each differ. While §1981 seeks to prevent racial discrimination in private and public contracts, §1982 was enacted to ensure all citizens had the same property rights, and Title VII was passed to prohibit employment discrimination. Under §1981, one can file suit based on race discrimination, but not national origin; whereas Title VII

4

provides individuals a mechanism to bring a workplace discrimination claim based upon sex, race, color, national origin, and religion.

Sections 1981 and 1982 were passed by Congress in 1866 while Title VII was passed in 1964 and amended in 1991. Under the canons of statutory construction, words should be given the meaning they had when the text was adopted. This canon was adhered to by the Supreme Court in <u>Shaare Tefila Congregation</u>, when it noted that while Jews were a protected race in 1866, they are no longer thought of as members of a separate race. Thus, we need not further address the concerns of the Anti-Defamation League on this point. (Doc. 24-3). Likewise, we need not address Bonadona's request for relief in his partial motion for summary judgment. (Doc. 34).

We find Bonadona's reliance upon <u>St. Francis College</u> and <u>Shaare Tefila Congregation</u> misplaced as they examined discrimination under §1981 and §1982 without consideration to Title VII. We also find his reliance upon <u>T.E. v. Pine Bush</u> misplaced even though it evaluated claims brought under Title VII. That district court failed to adhere to the canons of interpretation and statements within those very cases that §§1981 and 1982 should be interpreted according to the intent at the time they were passed. The same holds true for Title VII. At the time it was passed, the Jews were not thought of as a separate race. Had they been, the issue could and would likely have been addressed by now via precedential case law and/or the amendment to Title VII in 1991.

Accordingly, we do not find a valid claim has been made under Title VII for discrimination based on race.

<u>Racial Discrimination under 42 U.S.C. §1981</u>

Section 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts. 42 U.S.C. §1981. Racial discrimination claims brought pursuant to §1981 are governed by the same

evidentiary framework applicable to claims brought under Title VII. Jackson v. Watkins, 619 F.3d 463 (5th Cir.2010), Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir.2004).

Discrimination may be proven by either direct or circumstantial evidence. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir.2007). "Direct evidence is evidence, which, if believed, proves the fact without inference or presumption." Brown v. East Mississippi Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir.1993); Jones v. Robinson Prop. Grp. L.P., 427 F.3d 987, 922. Bonadona asserts he has direct evidence of the defendants' racial animus. Both are statements made by Charles about which he testified during his depositions.

The first statement by Charles is that he "was told by Coach Reni Mason, [his] Athletic Director, that [Bonadona] was not going to be hired because Dr. Brewer said he was – because of his Jewish descent." (Doc. 37-5, p.2). We find the first statement not usable for several reasons. First, Charles acknowledged he had no personal knowledge of a conversation between Brewer and Mason or the content of the conversation. (Id. at p.3). Without personal knowledge, the statement would certainly be inadmissible at trial under Federal Rule of Evidence 602. Second, the evidence constitutes hearsay within hearsay. While Fed. Rule of Evid. 805 allows the evidence to be admitted at trial if each part of the combined hearsay statement is covered by an exception to the hearsay rule, we do not find any of the exceptions applicable to these statements. Inadmissibility at trial also leads to the conclusion that the statement cannot be accepted as summary judgment evidence. Fed.R.Civ.P. 56(c)(2).

Bonadona argues that the hearsay exception found at Rule 801(d)(2)(D) should apply as Mason was an agent for LC and for Brewer when he relayed the supposed conversation about the reason for not hiring Bonadona between Brewer and Charles. In support, Bonadona cites Charles' deposition testimony where is was asked "[w]as Mason involved in the hiring process of the

defensive back coaching position in May of 2017?" Charles replied, "I feel like he was. I gave him all the information initially before I gave it to anyone else." Yet, Mason's deposition testimony clearly indicates Charles' "feeling" was misplaced. Mason testified in his deposition that while he regularly conducts interviews as LC's Athletic Director, this was not the case when Bonadona was interviewed. Mason explained he held the position for only three weeks when Charles provided Bonadona's information. (Doc. 37-4). Knowing that Brewer had the final say in hiring, he simply passed the information along to Brewer. (Id.). Although Mason set up Bonadona's interview and relayed the message that Charles should consider other candidates, he had no other role in deciding who to hire nor any knowledge as to why Bonadona was not hired.

In Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959 (5th Cir.2016), the Court confirmed that "[t]his exception does not apply to an employee's statement concerning a termination decision when that employee 'had nothing to do with' that decision. Id, at 967 (citing Staheli v. Univ. of Miss., 854 F.2d 121, 127 (5th Cir.1988). Accordingly, the evidence is inadmissible.

The second Charles' statement Bonadona contends is direct evidence is the content of a conversation between Charles and Brewer. The content of the conversation was memorialized by Charles in a "post interview report" of Taylor James[1] and discussed during Charles' deposition. That paragraph provides:

> Directly after the meeting Dr. Brewer pulls myself (Justin Charles) alone in his office and expresses to me that he feels Taylor is a good fit and his recommendation for the job and that the young Jewish man is a great candidate but not the best for LC but can find a job anywhere in the country with his resume.

(Doc. 45-4, p. 6). During the deposition, Charles was asked and confirmed that the term "young Jewish man" was in fact used by Brewer.

---

[1] Taylor James was also interviewed for the assistant coaching position.

Brewer acknowledged during his own deposition that he had a conversation of similar content with Charles, except that he never referred to Bonadona as the "young Jewish man." Rather, he told Charles the decision not to hire Bonadona was not based on his Jewish heritage.

To determine whether the remark is direct evidence or simply a stray remark as defendants contend, we follow the Fifth Circuit Court of Appeals which "appl[ies] a four-part test to determine whether [the remarks offered] are sufficient to overcome summary judgment." Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 764 (5th Cir.2016) (quoting Reed v. Neopost USA, Inc., 701 F.3d 434, 441 (5th Cir.2012) (citing Brown v. CSC Logic, Inc., 72 F.3d 651, 655 (5th Cir.1996). See also Etienne v. Spanish Lake Truck and Casino Plaza, LLC, 778 F.3d 473 (5th Cir. 2015). To qualify as direct evidence of discrimination, the comment must be: (1) related to race; (2) proximate in time to the adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and (4) related to the challenged employment decision at issue. See Etienne, 778 F.3d at 476; Eli Lilly, 820 F.3d at 759; Auguster v. Vermillion Par. Sch. Bd., 249 F.3d 400, 405 (5th Cir.2001)); CSC Logic, supra. Here, the comment at issue was allegedly made by Dr. Brewer, regarding Bonadona and his Jewish heritage at the time the decision on who to hire took place. Accordingly, we find this is indeed direct evidence of racial animus.

Having presented direct evidence of that discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." Etienne, supra. "To prevail on summary judgment, [defendants] must do more than merely identify a legitimate basis for its decision – it must show that any reasonable jury would conclude it would have made the same decision absent the discrimination." Id. (citation omitted).

The defendants do not directly address this burden of proof in their motion for summary judgment as they contend the evidence is circumstantial and subject to the burden shifting test under McDonnell Douglas. What they offer as a legitimate nondiscriminatory reason under that framework is that Bonadona was not hired because of to his inability to articulate a vibrant faith in Christ and also his failure to complete the employment application. Under the McDonnell Douglas framework, the reasons need only be proffered; there is no burden of establishing the nondiscriminatory motive by a preponderance of the evidence. Thus, there is no evidence before the court which would allow us to determine whether summary judgment should be granted in the defendants' favor.

Religious Exemptions

Finally, the defendants assert that adjudicating these claims violates both the "Religion Exemption" to Title VII claims found in Sections 702 and 703(e)(2) and the Free Exercise and Establishment clauses of the First Amendment. We disagree.

The "Religion Exemption" to Title VII is inapplicable to this case as the exemptions are aimed at religious based employment discrimination, not race. Bonadona did not make that claim here, nor could one exist as the parties agree Bonadona is a practicing Baptist.

To the extent defendants seek to escape liability under Title VII, they must prove the ministerial exception grounded in the Religion Clauses of the First Amendment applies in this case. In Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C, 565 U.S. 171 (2012), the Supreme Court found the ministerial exception applicable to more than just the head of a church. The Court did not create a bright-line definition of who meets the definition of a minister. Instead, they weighed facts regarding the employee's involvement in ministerial tasks.

In this case, the only evidence of a requirement of employment which is ministerial in nature is the ability to articulate a vibrant faith in Christ. Without more, we do not find that the assistant coaching position sought by Bonadona was ministerial in nature. Thus, the exception does not apply.

## Conclusion

In light of the foregoing, we find LC and Brewer's motion for summary judgment should be granted with respect to Bonadona's claims against defendants under Title VII for race discrimination and denied with respect to Bonadona's claims for race discrimination under 42 U.S.C. §1981.

The court will issue a judgment in conformity with these findings.

**SIGNED** this 28 day of August 2019, at Alexandria, Louisiana.

                                                  **JUDGE DEE D. DRELL**
                                      **UNITED STATES DISTRICT COURT**